# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2016AP2486-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Steven J. Sarbacker, Attorney at Law: |
| | Office of Lawyer Regulation,      Complainant,   v. Steven J. Sarbacker,      Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST SARBACKER

| | |
|---|---|
| OPINION FILED: | September 15, 2017 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | |
| COUNTY: | |
| JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | |
| NOT PARTICIPATING: | |

ATTORNEYS:

**2017 WI 86**

No. 2016AP2486-D

STATE OF WISCONSIN : IN SUPREME COURT

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

**In the Matter of Disciplinary Proceedings Against Steven J. Sarbacker, Attorney at Law:**

**Office of Lawyer Regulation,**

      **Complainant,**

  **v.**

**Steven J. Sarbacker,**

      **Respondent.**

**FILED**

**SEP 15, 2017**

Diane M. Fremgen
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶1 PER CURIAM. We review the report and recommendation of Referee James C. Boll, approving a partial stipulation filed by the Office of Lawyer Regulation (OLR) and Attorney Steven J. Sarbacker and concluding that Attorney Sarbacker committed the professional misconduct alleged by the OLR, as stipulated by the parties. The referee determined that a 60-day suspension of Attorney Sarbacker's license to practice law is appropriate.

¶2 Upon careful review of this matter, we uphold the referee's findings of fact and conclusions of law and agree that a 60-day license suspension is an appropriate sanction for Attorney Sarbacker's misconduct. We also find it appropriate to impose the full costs of this proceeding, which are $1,375.83 as of June 13, 2017. The OLR does not seek restitution and no restitution is ordered.

¶3 Attorney Sarbacker was admitted to practice law in Wisconsin in 1995. He practices in Portage, Wisconsin. In 2013, Attorney Sarbacker received a private reprimand for his conduct resulting in a misdemeanor conviction for operating while intoxicated. Private Reprimand No. 2013-15 (electronic copy available at https://compendium.wicourts.gov/app/raw/002634.html). In 2016, he received a private reprimand for his failure to obey a court order pertaining to child support. Private Reprimand No. 2016-9 (electronic copy available at https://compendium.wicourts.gov/app/raw/002899.html).

¶4 On December 21, 2016, the OLR filed a six count disciplinary complaint alleging five counts of professional misconduct involving one client matter and an additional count of professional misconduct based on criminal misconduct committed by Attorney Sarbacker. The OLR sought a 60-day suspension and costs.

¶5 The facts, to which the parties have stipulated, are as follows. In November 2011, D.F. and L.F., a married couple, obtained a $5,441.20 money judgment against a tenant in a

2

Columbia County circuit court proceeding. They retained Attorney Sarbacker to collect the money judgment. There was no written fee agreement. In July 2012, Sarbacker advised the clients in writing that he could no longer pursue their collection case. He did not charge them.

¶6 In 2013, the couple again retained Attorney Sarbacker to pursue the collection case. Again, there was no written fee agreement. By June of 2014, Attorney Sarbacker had successfully arranged for the Ho-Chunk Nation's Department of Treasury-Payroll Division (DOT-P) to garnish the wages of the debtor and, in July 2014, Attorney Sarbacker began receiving weekly garnishment checks on behalf of his clients. At this time, the outstanding debt was $5,914.45.

¶7 Attorney Sarbacker and the clients agreed that his fee and costs would total $2,032.73 and that he would take this amount from the garnishment checks, then send the balance of the garnishment funds to the clients. Attorney Sarbacker knew the total cost of representation exceeded $1,000, a fact relevant to whether a written fee agreement was required.

¶8 Attorney Sarbacker began depositing garnishment checks into both his trust account and operating accounts. By December 29, 2014, Attorney Sarbacker had received 24 garnishment checks totaling $2,038.30 - $5.57 more than his agreed upon fee of $2,032.73. After December 29, 2014, Attorney Sarbacker received 25 additional garnishment checks, representing the clients' portion of the garnishment but he did not disburse these funds to the clients.

¶9 By June 2015, the clients had demanded their garnishment portion from Attorney Sarbacker but Attorney Sarbacker failed to send them the garnished funds. Accordingly, L.F. contacted the DOT-P and requested that all remaining garnishment checks be sent directly to the clients. On June 26, 2015, the DOT-P began sending weekly garnishment checks directly to the clients.

¶10 On July 14, 2015, L.F. sent a certified letter to Attorney Sarbacker listing the clients' unsuccessful attempts to contact him. She demanded payment plus interest of the clients' portion of the garnishment funds in his possession. Attorney Sarbacker failed to respond.

¶11 Finally, by early October 2015, Attorney Sarbacker sent the clients a cashier's check in the amount of $2,171.29 and a receipt documenting $61.25 of incurred costs.[1]

¶12 The clients filed a grievance with the OLR. Attorney Sarbacker failed to promptly respond to the OLR's requests for information about the grievance.

¶13 Based on these events, the OLR alleged and Attorney Sarbacker has stipulated to five counts of misconduct in the complaint, as follows:

**Count One:** By representing the clients pursuant to an unwritten contingent fee agreement, Attorney Sarbacker violated SCR 20:1.5(c).[2]

---

[1] In total, the DOT-P issued 70 garnishment checks totaling $5,914.45. The clients received $3,881.72 ($1,710.43 from the DOT-P and $2,171.29 from Attorney Sarbacker).

**Count Two:** By depositing 15 garnishment checks totaling $1,273.49 into his business account, that were the property of the clients, and by disbursing $892.23 of the clients' funds to himself from his trust account Attorney Sarbacker, in each instance, violated SCR 20:1.15(b)(1).[3]

---

[2] SCR 20:1.5(c) provides:

A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by par. (d) or other law. A contingent fee agreement shall be in a writing signed by the client, and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal; litigation and other expenses to be deducted from the recovery; and whether such expenses are to be deducted before or after the contingent fee is calculated. The agreement must clearly notify the client of any expenses for which the client will be liable whether or not the client is the prevailing party. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and if there is a recovery, showing the remittance to the client and the method of its determination.

[3] Effective July 1, 2016, substantial changes were made to Supreme Court Rule 20:1.15, the "trust account rule." See S. Ct. Order 14-07, (issued Apr. 4, 2016, eff. July 1, 2016). Because the conduct underlying this case arose prior to July 1, 2016, unless otherwise indicated, all references to the supreme court rules will be to those in effect prior to July 1, 2016.

Former SCR 20:1.15(b)(1) provided:

A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and 3rd parties that is in the lawyer's possession in connection with a representation, All funds of clients and 3rd parties paid to a lawyer or law firm in connection with a representation shall be deposited in one or more identifiable trust accounts.

**Count Three:** By depositing 10 checks totaling $892.23 into his trust account and then disbursing almost all of those funds to himself or his law office, and by depositing the remaining 15 checks totaling $1,273.49 directly into his operating account, Attorney Sarbacker, in each instance, violated SCR 20:8.4(c).[4]

**Count Four:** By failing to promptly deliver to the clients their portion of the garnishment funds, Attorney Sarbacker violated former SCR 20:1.15(d)(1).[5]

**Count Five:** By failing to timely provide the OLR with a written response to the clients' grievance, Attorney Sarbacker violated SCR 22.03(2),[6] enforceable via 20:8.4(h).[7]

---

[4] SCR 20:8.4(c) provides: "It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[5] Former SCR 20:1.15(d)(1) provided:

Upon receiving funds or other property in which a client has an interest, or in which the lawyer has received notice that a 3rd party has an interest identified by a lien, court order, judgment, or contract, the lawyer shall promptly notify the client or 3rd party in writing. Except as stated in this rule or otherwise permitted by law or by agreement with the client, the lawyer shall promptly deliver to the client or 3rd party any funds or other property that the client or 3rd party is entitled to receive.

[6] SCR 22.03(2) provides:

Upon commencing an investigation, the director shall notify the respondent of the matter being investigated unless in the opinion of the director the investigation of the matter requires otherwise. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct within 20 days after being served by ordinary mail request for a written response. The director may allow additional time to respond. Following receipt of the response, the director may conduct further investigation and may compel the respondent to answer

(continued)

¶14 The sixth and final count of alleged misconduct does not involve representation of a client. On March 16, 2016, Attorney Sarbacker was charged in Sauk County circuit court with three misdemeanors: pointing a firearm at or toward another, battery, and disorderly conduct. See State v. Sarbacker, Sauk County circuit court case no. 2016CM000113. Attorney Sarbacker eventually pled no contest to the battery and disorderly conduct charges and the pointing a firearm charge was dismissed. Attorney Sarbacker entered into a 12-month deferred prosecution agreement whereby if he successfully complies with specific conditions, the charges will be dismissed.

¶15 After the court appointed a referee in this disciplinary matter, the parties executed a partial stipulation. The stipulation provides that Attorney Sarbacker does not contest the facts and that he admits to committing the alleged misconduct. He affirms that: the stipulation did not result from plea bargaining; he fully understands the misconduct allegations; he fully understands his right to contest this matter; he fully understands his right to consult with counsel; his entry into this stipulation is made knowingly and

_____

questions, furnish documents, and present any information deemed relevant to the investigation.

[7] SCR 20:8.4(h) provides: "It is professional misconduct for a lawyer to fail to cooperate in the investigation of a grievance filed with the office of lawyer regulation as required by SCR 21.15(4), SCR 22.001(9)(b), SCR 22.03(6), or SCR 22.04(1)."

7

voluntarily; and, his entry into this stipulation represents his decision not to contest the misconduct alleged in the complaint.

¶16 The parties agreed to submit the question of appropriate discipline to the referee, without an evidentiary hearing. Both parties filed briefs on the question of discipline. As noted, the OLR sought a 60-day suspension. Attorney Sarbacker argued for a public reprimand. In his brief, Attorney Sarbacker offered some personal context for the criminal charges against him. He also stated that a suspension would have a very adverse effect on his practice.

¶17 The OLR objected to the narrative in Attorney Sarbacker's brief, describing it as impermissible hearsay and an effort to present new evidence and new facts beyond the complaint and stipulation. The OLR asked the referee to disregard this information.

¶18 The referee issued a thorough report and recommendation on May 25, 2017. Based upon the parties' stipulation, the referee found that the OLR met its burden of proof with respect to all six counts of misconduct alleged in the complaint. With respect to the question of appropriate discipline, the referee reviewed the parties' respective submissions. The referee observed that Attorney Sarbacker submitted no authority that would justify his request for a public reprimand. The referee acknowledged that Attorney Sarbacker's brief presented additional facts surrounding the incident that led to count six of the complaint. The referee noted that he was "not able to determine the veracity and, thus,

the impact of the additional facts" and, accordingly, the referee limited his consideration to the stipulated facts in determining sanctions.

¶19 The referee then identified the factors relevant to determining the appropriate sanction, which include:

> [T]he seriousness, nature and extent of misconduct, the level of discipline needed to protect the public, the courts, and the legal system from repetition of the attorney's misconduct, the need to impress upon the attorney the seriousness of the misconduct and the need to deter other attorneys from committing similar misconduct.

In re Disciplinary Proceedings Against Scanlan, 2006 WI 38, ¶72, 290 Wis. 2d 30, 712 N.W.2d 877.

¶20 The referee observed that the OLR's brief provided several instructive cases, including two cases that were factually similar, although the lawyers in those cases each had more serious prior discipline than Attorney Sarbacker. In re Disciplinary Proceedings Against Wood, 2014 WI 116, 358 Wis. 2d 472, 854 N.W.2d 844, (ninety-day suspension for seven counts of misconduct stemming from representation of clients in a dispute with a construction company); and In re Disciplinary Proceedings Against Steinhafel, 2013 WI 93, 351 Wis. 2d 313, 839 N.W.2d 404, (four-month suspension for seven counts of misconduct stemming from two client matters and lawyer's criminal conviction). The referee found persuasive two cases both imposing a 60-day suspension. See In Disciplinary Proceedings Against Bartz, 2015 WI 61, 362 Wis. 2d 752, 864 N.W.2d 881, (lawyer with previous private reprimand suspended

9

for 60 days based on five counts of misconduct including failure to disburse settlement funds and failure to cooperate); and In re Disciplinary Proceedings Against Trowbridge, 177 Wis. 2d 485, 501 N.W.2d 452 (1993), (lawyer with previous private reprimand suspended for 60 days for failure to respond to client inquiries, failure to prosecute, and trust account violations, including a violation of SCR 20:8.4(c) for converting a $300 check payable to him as personal representative of his mother's estate).

¶21 In making his recommendation for a 60-day suspension here, the referee noted that Attorney Sarbacker had been previously disciplined and that the misappropriation of client funds occurred over a period of several months. The referee expressed concern about the vulnerability of the clients, who are both disabled. As mitigating factors, the referee noted that Attorney Sarbacker reimbursed the clients and has completed an anger management program. On balance, the referee recommended this court suspend Attorney Sarbacker's license to practice law for a period of 60 days.

¶22 No appeal was filed so we review this matter pursuant to SCR 22.17(2). This court will adopt the referee's findings of fact unless they are clearly erroneous. Conclusions of law are reviewed de novo. See In re Disciplinary Proceedings Against Eisenberg, 2004 WI 14, ¶5, 269 Wis. 2d 43, 675 N.W.2d 747. The court may impose whatever sanction it sees fit, regardless of the referee's recommendation. See In re

Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶23 We adopt the referee's findings of fact and conclusions of law that Attorney Sarbacker violated the supreme court rules as alleged in the six counts of the complaint. We further agree with the referee that a 60-day suspension of Attorney Sarbacker's license to practice law in Wisconsin is an appropriate level of discipline.

¶24 No two cases are precisely the same, but we agree with the referee that In re Disciplinary Proceeding Against Bartz, 2015 WI 61, 362 Wis. 2d 752, 864 N.W.2d 881 and In re Disciplinary Proceeding Against Trowbridge, 177 Wis. 2d 485, 501 N.W.2d 452 (1993) are instructive. We find the misconduct at issue here to be reasonably analogous to the misconduct in these cases, and we agree that a similar suspension is appropriate. We deem it appropriate, as is our usual custom, to impose the full costs of this disciplinary proceeding on Attorney Sarbacker. As Attorney Sarbacker has made restitution to D.F. and L.F., the OLR does not seek restitution and we do not impose restitution.

¶25 IT IS ORDERED that Attorney Steven J. Sarbacker's license to practice law in Wisconsin is suspended for a period of 60 days, effective October 27, 2017.

¶26 IT IS FURTHER ORDERED that within 60 days of the date of this order Steven J. Sarbacker shall pay to the Office of Lawyer Regulation the costs of this proceeding, which are $1,375.83 as of June 13, 2017.

¶27  IT IS FURTHER ORDERED that, to the extent that he has not already done so, Steven J. Sarbacker shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶28  IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement.  See SCR 22.28(3).